UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT WIEHR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>_____ ) | CASE NO. C04-1273-MJB<br><br>MEMORANDUM<br>OPINION |

Plaintiff Robert J. Wiehr appeals to the District Court from a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I. PROCEDURAL HISTORY

Plaintiff applied for DIB on May 8, 2001, after not being able to work due to hearing loss, fatigue, loss of eight toes that resulted in poor balance, a pulmonary condition, and asbestosis. Tr. 14, 64. The Social Security Administration ("SSA") determined that Plaintiff's conditions were not disabling and denied Plaintiff disability status initially (Tr. 26) and upon reconsideration (Tr. 32). A hearing was held before an Administrative Law Judge ("ALJ") on October 15, 2002, in which the Plaintiff, represented by counsel, testified along with Steve Cimbalista, a witness for the plaintiff.

Memorandum Opinion - Page 1

Tr. 14. The ALJ issued a decision on December 9, 2002, finding that Plaintiff was not disabled. Tr. 20-21. On March 30, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision final. Tr. 5. Plaintiff timely filed his appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's final decision with a remand for a rehearing. Plaintiff argues that the ALJ erred by: 1) failing to provide clear and convincing reasons for not finding Plaintiff's statements about his condition credible and 2) finding Plaintiff not disabled at step four and five despite his RFC limitations. The Commissioner argues that the ALJ's decision should be affirmed because it was supported by substantial evidence and free of legal error.

## III.  SUMMARY OF THE RECORD EVIDENCE

Because the parties have adequately summarized the record in their briefing, and because much of the record evidence is not relevant given the scope of the issues, the Court will not summarize the record here. Relevant evidence will be referenced as appropriate in the discussion.

The Plaintiff worked as a carpenter for more than thirty years. Tr. 65. On November 6, 2000, Plaintiff could no longer work as a carpenter due a combination of impairments including difficulty in hearing, the loss of his toes, fatigue, a pulmonary condition, and asbestosis. Tr. 64.

## IV.  STANDARD OF REVIEW

This court shall affirm the Commissioner's decision denying Plaintiff's application for DIB under Title II of the Social Security Act if supported by substantial evidence or if

Memorandum Opinion - Page 2

the Commissioner applied proper legal standards. *See* 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1237, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## V. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or metal impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security Regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or a combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment(s) meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the

Memorandum Opinion - Page 3

listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment(s) neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity ("RFC") and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## VI. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 20. At step two, the ALJ determined that Plaintiff had an impairment or a combination of impairments considered "severe." *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment that met or equaled the requirements of a listed impairment. *Id.* After step three but before step four, the ALJ determined that Plaintiff could lift fifty pounds occasionally and twenty five pounds frequently, could occasionally stoop or balance, needs to avoid concentrated exposure to fumes and hazards, and could not perform work that required acute hearing, concluding that Plaintiff could do a limited range of medium work. Tr. 21. At step four, the ALJ determined that Plaintiff retained the RFC to perform his past relevant work as a carpenter as that occupation is generally performed. *Id.* The ALJ made an alternative step five finding that Plaintiff was not disabled because he could do skilled carpentry work. *Id.*

Memorandum Opinion - Page 4

## VII.  DISCUSSION

A.  <u>Plaintiff's Credibility</u>

If a claimant has established an underlying impairment which reasonably could be expected to produce the alleged subjective complaints and there is no evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *See Smolen v. Chater*, 80 F.3d at 1281.  General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988) (Varney I).

First, Plaintiff argues that one of the ALJ's reasons for discounting his credibility, which was that "plaintiff worked with his impairments for many years and there is no evidence that plaintiff's condition is worse now that it was when he was working" (Tr. 19), was inconsistent with the ALJ's own finding that plaintiff could not do his past relevant work as actually performed (Tr. 20).  Plaintiff believes that the ALJ's finding that Plaintiff could not do his past relevant work as actually performed necessarily meant that his impairments had gotten worse.  However, the ALJ's finding did not relate to the worsening of Plaintiff's impairments, rather, it was based on the ALJ acceptance of Plaintiff's and Mr. Cimbalista's testimony that Plaintiff was experiencing fatigue when lifting seventy (70) to two-hundred (200), which his past work required.  *See* Tr. 19 ("Certainly at his age, 80 pounds is a lot of weight and could be expected to cause fatigue.").

Plaintiff also points to the fact that Plaintiff's hearing had gotten worse (Tr. 132) as evidence of his worsening condition.  However, the "very severe drop in hearing" was limited to the left ear (Tr. 132), meaning Plaintiff could still hear, and any worsening in this condition had no bearing on Plaintiff's ability to do his past relevant job.

Memorandum Opinion - Page 5

Second, Plaintiff faults the ALJ for finding that Plaintiff's receipt of unemployment benefits weighed on his credibility. The ALJ reasoned that by applying for unemployment benefits, Plaintiff had to represent to the Department of Employment Security that he was ready, willing, and able to work (Tr. 19), which contradicted his allegation of being disabled. *See*, *e.g.*, *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). Plaintiff asserts that the standard of eligibility for unemployment benefits and the Social Security Disability benefits are distinct and eligibility for one program does not imply ineligibility for the other programs.[1] Plaintiff notes that his representation to the Department of Employment Security that he is able to do unskilled light work is not inconsistent with his application for disability benefits because, under the regulations, even if he could perform every unskilled light-level job, at his age (55 years old in 2001), he would be considered disabled. *See* 20 C.F.R. Pt 404, Subpt P, App. 2, Tbl. 2 (2004). Plaintiff's statement would be true if he was, in fact, representing that he is capable of doing unskilled light work. However, R.C.W. §§ 50.20.010, 50.20.100 require that an applicant for unemployment benefits be able to perform past work. Plaintiff's past work was heavy work, therefore, in this case there is an inconsistency.

Third, Plaintiff argues that the ALJ's reliance on the fact that Plaintiff took care of his infant daughter for a short period of time, as a reason to discount his credibility, was erroneous. Plaintiff notes that the effort involved in taking care of his infant daughter, which he did with difficulty, hardly rose to the level of full time medium work that the ALJ determined Plaintiff could do. While the Court agrees with Plaintiff, that the degree of activity involved in taking care of his infant daughter was not a clear a convincing

---

[1] Plaintiff also argues that 20 C.F.R. § 416.210, which makes it mandatory to apply for all benefits for which a claimant may be eligible, proves that applying for disability benefits and applying for other benefits are not mutually exclusive. However, Plaintiff is applying for DIB not SSI benefits, and the eligibility requirements for each program are distinct. Therefore, Plaintiff's reliance on this section even as an example, is inappropriate.

Memorandum Opinion - Page 6

reason to discount his credibility, s*ee Morgan v. Commissioner of Social Sec. Admin.*, 163 F.3d 595, 600 (9th Cir. 1999), the ALJ provided many other reasons that the court finds sufficient. In addition to the above stated reasons, the ALJ cited the following reasons: 1) Plaintiff rarely sees a doctor despite his testimony to fatigue and pain; 2) Plaintiff's poor balance was remedied by using orthotics as noted by Dr. Vance; 3) Plaintiff did not see Dr. Vance after his initial visit to get the orthotics, even though orthotics last only six months, and he continued to work for one year after that initial visit without reporting any significant problems with his ability to walk or stand; 4) Plaintiff takes no medications to relieve pain suggesting that his pain is not intense; 5) Plaintiff, as late as 2001, was able to hang an eighty (80) pound door, albeit with fatigue. Tr. 19.

Accordingly, the Court finds that the ALJ did not err in discounting Plaintiff's credibility.

B.   Laywitness Opinion

Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account, unless such testimony is expressly disregarded, in which case "he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

*1. Selena Wiehr*

Plaintiff argues that the ALJ did not properly reject the statement submitted by Selena Wiehr, Plaintiff's wife, in support of Plaintiff's testimony that he had difficulty taking care of his infant daughter. *See* Tr. 103-04. While the ALJ erred in failing to expressly disregard Mrs. Wiehr's statement, given the Court's finding that the ALJ gave sufficient reasons to discount Plaintiff's credibility, notwithstanding the issue of him taking care of his daughter, we find such an error harmless. *See Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2003).

*2. Steve Cimbalista*

Memorandum Opinion - Page 7

Plaintiff also argues that even though the ALJ found Steve Cimbalista, Plaintiff's friend and co-worker, to be credible the ALJ did not accord his testimony the proper weight. In response to Mr. Cimbalista description that Plaintiff's work pace was getting slower, the ALJ stated that "[c]laimant's friend was generally credible, and I accept that the claimant probably is not able to work at the speed he used to, but this is not a sign of disability." Tr. 19. Plaintiff argues the pace and productivity of a worker is relevant because a claimant is disabled if he cannot do "sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The Court finds no inconsistency in the ALJ's statement because the fact that Plaintiff's work pace was getting slower due to the heavy lifting involved in his job did not mean that Plaintiff could not do any sustained work-related activities on a full-time basis.

C. <u>Step Four Finding</u>

At step four the ALJ evaluates a claimant's RFC, *see* 20 C.F.R. §§ 404.1545(a)-(c), 404.1546, and SSR 96-8p, and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520. A claimant is not disabled at step four if he can perform his past relevant work either as the claimant actually performed it or as generally performed in the national economy. 20 C.F.R. §§ 404.1560(b), 404.1561.

Plaintiff argues that based on the ALJ's own RFC assessment, the ALJ should have found Plaintiff incapable of doing his past relevant work as generally performed in the national economy. The ALJ determined that Plaintiff had the following RFC: "[he] could lift fifty pounds occasionally and 25 pounds frequently. He could only occasionally stoop or balance and he needs to avoid concentrated exposure to fumes and hazards. He could not perform work that required acute hearing." Tr. 21.

    1.    *Exposure to Hazards*

Plaintiff argues that the statement "avoid concentrated exposure to . . . hazards" meant that Plaintiff could not perform any work that involved working at heights.

Memorandum Opinion - Page 8

Specifically, Plaintiff argues that exposure to heights is a "concentrated hazard," and because the Dictionary of Occupation Titles ("DOT") job description for a Carpenter (*DOT* 860.381-022) lists high exposed places as a hazard existing occasionally (up to 1/3 of the time), Plaintiff could not perform such a job. Plaintiff states that the fact that Plaintiff's occupation requires working in high exposed places for only one-third of the workday, does not make the hazard any less "concentrated." He explains that heights are a concentrated hazard in Plaintiff's case because of his poor balance and because his reduced hearing makes him less able to hear a warning by co-worker regarding an impending danger.

There is no support for Plaintiff's position that "concentrated exposure" means all exposure. In the state agency physician's RFC assessment, which the ALJ adopted, David Deutsch, M.D., had the following four options with respect to Plaintiff's degree of environmental limitations: avoid all exposure, avoid even moderate exposure, avoid concentrated exposure, and unlimited. Tr. 139. Dr. Deutsch marked the "avoid concentrated exposure" box for hazards such as machinery and heights. *Id.* Therefore, the proper equivalent for avoiding "concentrated exposure" is avoiding "frequent exposure" to such hazards.

Additionally, Plaintiff's explanation for why, in his case, working at heights for any period of time is a concentrated hazard is unconvincing. Plaintiff explains that working at heights requires good balance, which he lacks. As noted earlier in the discussion, Plaintiff's problem with "poor balance" is remedied by the use of orthotics. Furthermore, in spite of his alleged poor balance, Plaintiff continued to work as a carpenter for ten years after the loss of his toes. Plaintiff also explains that hearing is essential when working at heights in order to hear any warning from a co-worker about an impending danger. Plaintiff, however, does not cite to any discussion in the record regarding the need for acute hearing while working at heights because of concern over

Memorandum Opinion - Page 9

Plaintiff's inability to hear warnings. At the hearing, Plaintiff testified that his partial loss of hearing causes him problems at work only because of his inability to hear work instructions. Tr. 188-89. Furthermore, the deterioration in hearing is limited to Plaintiff's left ear and he can hear perfectly well with his right ear. Tr. 133. Therefore, the Court is not convinced that Plaintiff's hearing poses a problem when it comes to hearing warnings by co-workers.

### 2. *Acute Hearing Limitation*

Plaintiff alleges that Plaintiff cannot do the job of a construction carpenter because the job requires hearing occasionally, *see DOT* 860.381-022, and the ALJ limited Plaintiff to jobs that do not require "acute hearing." Plaintiff argues that the ALJ's statement that the job of carpenter does not require "acute hearing" (Tr. 20) is a mere assertion since the DOT description does not specify the level of hearing required. Alternatively, Plaintiff argues that the ALJ's acute-hearing finding is unreviewable because the ALJ did not specify what he meant by "acute hearing," and that the term is ambiguous in the absence of a definition by the ALJ.

There is no reason to believe that the ALJ intended anything by using the word "acute" other than its ordinary meaning. One of the definitions of acute is "extremely sensitive even to slight details or impressions." Random House Webster's College Dictionary (1991). The record reveals that while Plaintiff has difficulty understanding speech with his left ear and may need to tilt his head to the right in order to hear instructions, he is still able to function at his job. Given the fact that Plaintiff needs hearing only occasionally means that he is not greatly inconvenienced by this loss of hearing in only one ear when it comes to performing his job.

D. <u>Step Five Finding</u>

Because the ALJ at step four properly found that Plaintiff could perform his past relevant work, the Court need to address the ALJ's step five finding.

Memorandum Opinion - Page 10

VIII.  CONCLUSION

Based on the above reasoning, the Commissioner's decision is supported by substantial evidence and is free of legal error.  Accordingly, the Commissioner's decision is AFFIRMED.

DATED this  30th  day of September, 2005.

*/s/ M.J. Benton*
MONICA J. BENTON
United States Magistrate Judge